**Affirmed and Opinion Filed January 16, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01034-CV

### IN THE INTEREST OF O.W., A CHILD

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JD-78471-X**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Bridges

Appellant O.W. appeals from an order of adjudication and judgment of disposition with no placement in which the trial court found him to be a child engaged in delinquent conduct. In a single issue, O.W. argues the trial court abused its discretion by ordering him to remain in the custody of his aunt, rather than his mother, for the period of probation. We affirm.

### Background

O.W. was a fourteen-year-old boy who approached the complainant on or about April 10, 2013 and asked if she knew who he was. When she started to walk away, O.W. grabbed her by the arm and threw her to the ground. O.W. pinned the complainant to the ground, but she fought her way up and ran. O.W. forced her down again and told her "to be still and be quiet, and to make it easy on [her]self." He touched complainant on her breast under her shirt and bra and on her behind over her underwear, but under her pants. She continued to fight until her friend returned to the gym, and she was able to get away.

After the complainant reported the incident to the school principal, O.W. was questioned and admitted what complainant had accused him of was true. As a result of the offense, a petition regarding a child engaged in delinquent conduct was filed shortly thereafter. O.W. pleaded true to the offense alleged in the petition, and the Court found him to be a child engaged in delinquent conduct.

At the May 16, 2013 hearing, the juvenile department recommended O.W. be placed on two years of intensive supervision probation in the custody of his aunt. The department further asked the trial court to order O.W. not to associate with the victim or have unsupervised contact with other children three or more years younger than him unless approved in advance by the treatment team.[1] The department's records indicated O.W.'s mother's home included two younger siblings (ages 9 or 10 and 12) and, therefore, recommended O.W. live with his aunt, who had no children in her home. Furthermore, the aunt lived in a different school district than the victim, preventing O.W. from attending the same school as the victim.

O.W.'s mother testified that, besides O.W., she had a twelve-year-old son living in her home, but no other children lived with her. She explained the other child noted by the department was O.W.'s younger sister, but she did not live with them.[2] O.W.'s mother stated there would be no issues with O.W. returning home to live with his male sibling. The Court continued the disposition for a safety plan on the mother's home and a plan for school, stating "he can't go back to school with this victim."

The continued disposition hearing took place on May 28, 2013. At that time, the juvenile department's recommendation for O.W. remained the same, i.e. asking the trial court to order

---

[1] In addition to the foregoing, the juvenile department also requested the Court order O.W. to: (1) 45 hours of community service restitution, (2) a $15.00 per month probation fee, (3) participate in the STARS Program, (4) pay $910.00 for the counseling program, (5) submit to polygraph testing, (6) comply with the safety plan as developed, (7) submit a DNA sample, and (8) pay $34.00 for the DNA sample test.

[2] The younger sister and O.W. shared a father, but did not have the same mother.

O.W. to reside with his aunt.[3]  Pam Degroff, testifying on behalf of the department, stated that although the mother's home was found "suitable" under the safety plan, the department does not consider a home with a younger sibling appropriate in some cases, which is why the aunt's home was also considered.  Degroff also explained a neighbor would be providing after-school supervision if O.W. lived with his mother, but the department had no information on the neighbor, including whether or not the neighbor had younger children in the home.[4]  Further, Degroff explained the mother had three different phone numbers that O.W. had access to, and those phones had texting and camera capability.  In her opinion, a child who has been adjudicated a sex offender should not have access to phones with texting and camera capability.  Finally, Degroff testified the department was unaware of the other schools O.W. could attend if he remained in his mother's home and that she was unaware of alternative schooling that had been explored by the mother.

O.W.'s mother also testified at the continued hearing, indicating there has never been any need for concern about contact between O.W. and his younger brother.  She further explained the neighbor, who had offered to provide after-school care for O.W., had young children in her home.[5]  His mother stated O.W. did not have access to the three cell phones listed by the department, but he had his own cell phone.  She indicated O.W.'s cell phone was set-up to call her, her mother, her sister, and her aunt only.  She also testified he had no internet service on his phone and no texting capabilities.  With regard to the issue of school, O.W.'s mother testified she had spoken to the school administrator, who indicated he needed an order from the judge that she wanted O.W. transferred to the only other middle school in the district.  Finally, his mother

---

[3] The additional terms also remained the same.

[4] The neighbor was not present at the hearing.

[5] The two daughters were aged 15 and 1 or 2.

explained O.W. was going into the 9th grade, and there was only one school for 9th grade in her district. She admitted that was where the victim could potentially attend.

Our review of the record also shows there had been a prior finding of abuse between appellant and his mother in March 2013.[6] The Texas department of family and protective services made a finding of "reason to believe" for physical abuse as a result of its investigation. The record reflects O.W.'s mother was taking parenting and anger management classes and receiving counseling as a result of the finding.

The record further notes O.W.'s aunt lived in a high crime area with poor performing schools, but the department's home study also indicated his aunt's home was clean and well-kept. The study also stated O.W. would have his own bedroom, would have constant supervision by the aunt and great aunt, and there were no other children in the home. Finally, the study showed that if O.W. lived with his aunt, he would attend a different school than the victim.

In making its decision, the trial court noted there were too many unknown variables with regard to the mother's house. Specifically, the court expressed its concern over O.W. attending the same high school as the victim. In addition, the after-school supervision by the mother's neighbor raised a concern for the court. Therefore, the trial court followed the recommendation of the juvenile department and ordered O.W.'s probation to take place in the custody of his aunt.

### Analysis

In a single issue, O.W. alleges the trial court abused its discretion in ordering him to live with his aunt during the period of probation. Juvenile courts have broad discretion in determining the suitable disposition of children found to have engaged in delinquent conduct. *See In re A.R.D.,* 100 S.W.3d 649, 650 (Tex. App.—Dallas 2003, no pet.); *In re J.M.,* 25 S.W.3d

---

[6] This finding was based on an incident in which the mother was found to have struck O.W. with a cord, and he went to school with bruises on his arms and back.

364, 367 (Tex. App.—Fort Worth 2000, no pet.). Absent an abuse of discretion by the trial court, a reviewing court will not disturb the juvenile court's determination. *See In re K.L.N.*, 103 S.W.3d 465, 466 (Tex. App.—San Antonio, 2003, no pet.).

O.W. claims that because the evidence shows his aunt lived in a high crime area with poor performing schools, the trial court should have allowed O.W. to remain with his mother during the period of probation. We disagree. After reviewing the briefs of the parties and the record in its entirety, we determine the record supports the trial court's judgment, such as too many unknown variables with regard to the mother's house, including the supervision of O.W. and his school. We, therefore, conclude the trial court did not abuse its discretion in ordering O.W. to live with his aunt during the period of probation. *See In re A.R.D.,* 100 S.W.3d at 650. We overrule O.W.'s sole issue and affirm the judgment of the trial court.

131034F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF O.W., A CHILD

No. 05-13-01034-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas

Trial Court Cause No. JD-78471-X.

Opinion delivered by Justice Bridges.

Justices Moseley and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered January 16, 2014

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE